## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ELISA S. GALLO, M.D.

       Plaintiff,

                                    Case No. 15-cv-304

       v.

FRANCISCAN SKEMP HEALTHCARE, INC.
and MICHAEL WHITE, M.D.

       Defendants.

## COMPLAINT

Plaintiff, Elisa S. Gallo, M.D. ("Dr. Gallo") by her attorneys, Bellas & Wachowski and Cullen Weston Pines & Bach LLP, as a Complaint against Franciscan Skemp Healthcare, Inc. ("Mayo Clinic"), and Michael White, M.D. ("Dr. White") states as follows:

### PARTIES

1.      Elisa S. Gallo, M.D. ("Dr. Gallo") is a citizen of the State of Illinois whose address is 293 Sheridan Road, Highland Park, Illinois 60035.

2.      Franciscan Skemp Healthcare, Inc. (hereinafter "Mayo Clinic") is a Wisconsin Corporation, the address of which is 700 West Avenue South, La Crosse, Wisconsin 54601 which, on information and belief, is wholly owned and controlled by Mayo Health System, a nonprofit Minnesota Corporation.

3.      Michael White, M.D. ("Dr. White") is a citizen of the State of Wisconsin whose business address is 800 West Avenue South, La Crosse, Wisconsin 54601, who was at all times relevant to this matter employed by Mayo Clinic.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant Mayo Clinic is located in the Western District of Wisconsin and engaged therein in the conduct described hereinafter.

## FACTS

6.      Dr. Gallo was employed with the Mayo Clinic from February 1, 2010 to October 1, 2010 and worked under the direction, supervision and control of Dr. White who was employed by the Mayo Clinic as the Head of its Dermatology Department.

7.      Dr. Gallo's salary (prior to any bonuses or other benefits) while employed by Mayo Clinic was $285,000.00 on an annualized basis.

8.      On September 30, 2010, Dr. Gallo entered into a Separation Agreement and General Release (the "Agreement"), a true and correct copy which is attached and incorporated as "Exhibit 1."

9.      The Agreement provides, in relevant part:

"The parties have agreed upon a letter of reference for Employee to be provided to potential employers seeking a reference. Employer will provide a signed original letter of reference on company letterhead not marked as an exhibit

within two business days this Agreement is signed by Employee. In the event that the Employer receives any requests for a verbal reference for Employee, all such requests shall be directed to Barbara Saathoff, who will respond to the inquiry pursuant to the normal procedural protocol relevant to Employee's dates of employment and position. Employer will state nothing that will be inconsistent with the letter of reference. No reference will be made to any performance issue and nothing derogatory will be stated. Employer agrees that it will expunge all references to any disciplinary or performance concerns relevant to Employee. If asked why Dr. Gallo has left its employ, Employer will state only that due to the dire medical situation with her grandmother that Dr. Gallo desires to relocate to Chicago.  Nothing will be said or inferred that Dr. Gallo is not eligible for re-employment at any time."

10.    The Agreement also provides, in relevant part:

"As a further inducement to the parties to enter into this Separation Agreement and General Release, both parties agree not to make any verbal or written statements, derogatory or disparaging remarks against or about the other or any of its employees or affiliates."

11.    In or about February 2013, Dr. Gallo met Dr. Mark Lebwohl, Chairman of Mt. Sinai Medical School's Department of Dermatology, at a dermatology continuing education conference.

12.    Through Dr. Lebwohl, Dr. Gallo was able to secure an interview with the medical director for Refuah Health Center ("Refuah") in New Square, NY.

13.    Dr. Gallo thereafter engaged in negotiations for and then accepted a position with Refuah Health Center as a staff dermatologist, the duties of which also included attending lectures and teaching at Mt. Sinai Hospital in New York City ("Mt. Sinai").

14.    As a part of the employment package, Dr. Gallo was told that after six months of successful performance with Refuah, she would be considered for a position as an Assistant Professor at Mt. Sinai.

3

15.    Dr. Gallo also completed a months' long process to obtain a medical license from the State of New York and completed continuing medical education courses required by the State of New York, all of which was necessary to allow her to immediately begin to practice medicine with Refuah once her credentialing process at Mt. Sinai had been completed.

16.    Dr. Gallo was given a starting date for the position at Refuah. The final prerequisite for Dr. Gallo's employment to begin at Refuah was for her to be credentialed by Mt. Sinai.

17.    Dr. Gallo submitted her request to be credentialed at Mt. Sinai.

18.    Mt. Sinai as a standard part of the credentialing process contacted the Mayo Clinic as it had been one of Dr. Gallo's previous employers.

19.    Pursuant to the Agreement with Mayo Clinic, any response by Mayo Clinic, to Mt. Sinai's request for information in its credentialing process should have been made through the letter of reference that was negotiated as part of the Agreement.

20.    Instead, Dr. White submitted a different written evaluation of Dr. Gallo's performance to Mt. Sinai for its use in its credentialing process.

21.    Dr. White's written evaluation rated Dr. Gallo on a performance standard as merely "fair."

22.    The term "fair" when used in evaluating the performance of a physician is a "code word" to warn medical institutions that a candidate for employment is sub-par.

23.    Subsequent to sending in the written evaluation rating Dr. Gallo's performance as only "fair," Dr. White personally called Dr. Lebwohl, and in direct

contravention of the terms of the Agreement, on information and belief, made negative and disparaging statements about Dr. Gallo's performance with Mayo Clinic.

24.     Dr. White provided his written evaluation of Dr. Gallo's performance and made his negative and disparaging statements about Dr. Gallo with the knowledge of Mayo Clinic and within the scope of authority allowed him by Mayo Clinic despite the provisions of the Agreement that restricted Mayo Clinic and its employees from providing such information in a written form other than the agreed letter of reference and that restricted Mayo Clinic and its employees from disparaging Dr. Gallo.

25.     On May 15, 2014, Dr. Lebwohl informed Dr. Gallo that due to the negative information about her that Mt. Sinai had received from Mayo Clinic the credentialing application with Mt. Sinai would not be pursued to conclusion and Dr. Gallo would not be employed by Refuah or Mt. Sinai.

## COUNT 1 – BREACH OF CONTRACT
## MAYO CLINIC

26.     Plaintiff re-alleges and incorporates herein by reference Paragraphs 1 through 25 above, as though fully set forth herein.

27.     The Agreement between the Plaintiff and Mayo Clinic is a valid contract between the parties that was in full force and effect when Mayo Clinic received a request for information from Mt. Sinai.

28.     The Agreement placed specific restrictions upon Mayo Clinic and its employees and agent, including Dr. White, as to how it must respond to any request for information regarding Dr. Gallo and who must respond to such a request.

29.    The Agreement also placed specific restrictions upon Mayo Clinic and its employees and agents (including Dr. White) which prohibited them from making verbal or written disparaging remarks about Dr. Gallo.

30.    Dr. Gallo has performed all of her obligations under the terms of the Agreement.

31.    Mayo Clinic breached the Agreement in one or more of the following ways:

    a.    When it received a request for information from the credentialing committee at Mt. Sinai related to Dr. Gallo, Mayo Clinic did not send out the form letter of reference that was required under Section 1 B of the Agreement, and instead provided information in form and content that was contrary to the terms of the Agreement.

    b.    When it received a request for information from the credentialing committee at Mt. Sinai related to Dr. Gallo, Mayo Clinic did not have the request forwarded to and responded to by Barbara Saathoff, but instead allowed Dr. White to respond in writing.

    c.    When it received a request for information from the credentialing committee at Mt. Sinai related to Dr. Gallo, Dr. White, on behalf of Mayo Clinic, provided in writing disparaging information by using a "code word" (i.e. "fair") to describe Dr. Gallo's performance, which is commonly understood to convey a negative assessment of a physician's abilities and performance.

    d.    Dr. White talked with Dr. Lebwohl at Mt. Sinai and during the course of that conversation, on information and belief, Dr. White made negative and disparaging remarks about Dr. Gallo and her professional competence.

32.    As a direct consequence of Mayo Clinic's breaches of the Agreement, Dr. Gallo has suffered, among other things, a substantial past loss of wages and benefits, injury to her career and a substantial diminution of her future earning capacity.

## COUNT 2 – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONFIDENTIAL RELATIONS

33.     Plaintiff re-alleges and incorporates herein by reference Paragraphs 1 through 32 above, as though fully set forth herein.

34.     In light of Dr. Gallo's acceptance of an offer of employment from Refuah, subject to her credentialing by Mt. Sinai, Dr. Gallo had a reasonable expectation of entering into an employment relationship with Refuah and Mt. Sinai.

35.     Mayo Clinic and Dr. White had knowledge of Dr. Gallo's reasonable expectation of entering into an employment relationship with Mt. Sinai by virtue of the fact that they were contacted by Mt. Sinai to provide reference and credentialing information regarding Dr. Gallo.

36.     Mayo Clinic and Dr. White's actions as set forth herein intentionally interfered with Dr. Gallo's reasonable expectation of entering into relationships with Refuah and Mt. Sinai, and as a result of their wrongful conduct, prevented the employment relationship between Dr. Gallo and Refuah and Mt. Sinai from being completed.

37.     The wrongful conduct by Mayo Clinic and Dr. White hereinbefore described was intentional, willful and malicious.

38.     As a result of the wrongful conduct by Mayo Clinic and Dr. White, Dr. Gallo has been damaged because her expectation of employment with Refuah and Mt. Sinai was destroyed, her credentialing as a physician has been disrupted, as has her

ability to become employed in the field of academic medicine and she has suffered

actual damages well in excess of $75,000.00.

39.     Because the conduct by Mayo Clinic hereinbefore described was

intentional, willful and malicious, Dr. Gallo is entitled to punitive damages.

WHEREFORE, the Plaintiff, Elisa S. Gallo, M.D., requests judgment against the

Defendants:

A.     for compensatory and punitive damages;

B.     for the costs, fees and disbursements of this action; and

C.     for such other relief as the Court may deem just and proper.

**Plaintiff hereby requests a jury trial.**

Respectfully submitted this 26th day of May, 2015

ELISA S. GALLO, M.D.,
/s/*Lester A. Pines*
Lester A. Pines, SBN 1016543
CULLEN WESTON PINES & BACH LLP
122 West Washington Ave., Suite 900
Madison, Wisconsin 53703
Telephone: (608) 251-0101
Facsimile:  (608) 251-2883
Email: pines@cwpb.com

George S. Bellas, *pro hac vice pending*
William P. Boznos, *pro hac vice pending*
Misty Bubonis, *pro hac vice pending*
BELLAS & WACHOWSKI
15 N. Northwest Highway
Park Ridge, Illinois 60068
Telephone: (847) 823-9030
Email:  george@bellas-wachowski.com
           bill@bellas-wachowski.com
           misty@bellas-wachowski.com

*Attorneys for Plaintiff*

8